1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CLIFTON HUTCHINS, JR.,                    Case No.  1:15-cv-01537-DAD-HBK

12                    Plaintiff,               FINDINGS AND RECOMMENDATIONS TO
                                               GRANT DEFENDANT'S MOTION FOR
13          v.                                 SUMMARY JUDGMENT[2]

14   A. JOHAL[1],                              FOURTEEN-DAY OBJECTION PERIOD

15                    Defendant.               (Doc. No. 59)

16                                             ORDER DIRECTING CLERK OF COURT TO
                                               CORRECT DOCKET
17

18          Pending before the Court is Defendant Johal's Motion for Summary Judgment filed on

19   December 23, 2019.[3]  (Doc. No. 59, "MSJ").  Plaintiff filed an opposition and Defendant filed a

20   reply.  (Doc. Nos. 67, 68).  For the reasons stated below, the undersigned finds no genuine dispute

21   as to any material facts and recommends Defendant Johal's MSJ be granted.

22   ///

23   ///

24   _____

25   [1] The docket currently reflects the names of other defendants who have been dismissed from this action.
     As discussed *infra*, this action is proceeding only against Defendant A. Johal.  (*See* Doc. No. 55).
26   Accordingly, the Clerk of Court is directed to terminate the following defendants from the docket: Bill
     Lockyer, Sheheta, Ramos, Patel, J. Katavich, and J. Lewis.
27   [2] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2019).
28   [3] This case was reassigned to the undersigned on November 17, 2020.  (Doc. No. 69).  The stay entered in
     this case was recently lifted.  (See Doc. Nos. 49, 72).

# I. BACKGROUND

## A. Procedural History

Plaintiff Clifton Hutchins, Jr. ("Plaintiff" or "Hutchins"), a state prisoner, initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 on September 11, 2015. (Doc. No. 1). Plaintiff is proceeding on his second amended complaint ("SAC"). (Doc. No. 21). On October 17, 2016, the then-assigned magistrate judge found that Hutchins' SAC stated cognizable claims of Eighth Amendment medical deliberate indifference and First Amendment retaliation against Defendant Johal but found that all other claims and Defendants should be dismissed. (Doc. No. 20 at 11). Plaintiff advised the Court he agreed "to proceed only on the claims the court found cognizable." (Doc. No. 24). In response to the SAC, Defendant Johal filed a Rule 12(b)(6) motion arguing the SAC failed to state any cognizable claims and claiming Defendant Johal was entitled to qualified immunity. (Doc. No. 30-1). The then-assigned magistrate judge issued findings and recommendations to deny Defendant's motion to dismiss (Doc. No. 34) and these findings and recommendations were adopted by the District Court (Doc. No. 37). Defendant Johal then filed an answer to the complaint. (Doc. No. 38). Thereafter, Defendant Johan moved for exhaustion-based summary judgment. (Doc. No. 41). The Court granted in part and denied in part Defendant's exhaustion-based motion for summary judgment, finding Hutchins had exhausted his medical deliberate indifference claim, but had not exhausted his retaliation claim and dismissed the retaliation claim. (Doc. Nos. 53, 55). Thus, this case proceeds only against Defendant Johal on Plaintiff's Eighth Amendment medical deliberate indifference claim as described below.

## B. Evidence Submitted by the Parties

After discovery and in compliance with the modified scheduling order (Doc. No. 58), Johal timely filed the instant merits based MSJ. (Doc. No. 59). In support, Johal submits a statement of undisputed facts (Doc. No. 59-2 at 1-8); Johal's declaration (*id*. at 10-16); excerpts from Plaintiff's medical records (*id*. at 21-55, 84-127); excerpts from Plaintiff's deposition transcript (*id*. at 57-70); declaration and CV of Bennett Feinberg (*id*. at. 72-82); and a statement of undisputed facts (Doc. No. 59-2). Plaintiff's opposition to Defendant's motion for summary

1  judgment (Doc. No. 67) includes his own declaration (*id.* at 12-13); various medical records and

2  health care services request forms (*id.* at 15-28, 44); handwritten objections on a portion of

3  Defendant's statement of undisputed facts (*id.* at 30); and a copy of Defendant's answer to the

4  complaint (*id.* at 32-42).  Defendant filed a reply to Plaintiff's opposition (Doc. No. 68); a reply

5  to Plaintiff's response to Defendant's statement of undisputed facts (Doc. No. 68-1 at 1-17);

6  Defendant's own declaration in support of his reply to Plaintiff's opposition (*id.* at 19-20);

7  objections to evidence Plaintiff submitted in support of his opposition (Doc. No. 68-2 at 1-4);

8  declaration of L. Morales in support of Defendant's reply to Plaintiff's opposition (*id.* at 6-7); and

9  a copy of Defendant's notice of deposition of Plaintiff and request for production of documents

10  (*id.* at 9-12).

## II.  APPLICABLE LAW

### A.  Summary Judgment Standard

13      The "purpose of summary judgment is to pierce the pleadings and to assess the proof in

14  order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. Ltd. v.*

15  *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is

16  appropriate when there is "no genuine dispute as to any material fact and the movant is entitled

17  to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment should be entered

18  "after adequate time for discovery and upon motion, against a party who fails to make a

19  showing sufficient to establish the existence of an element essential to that party's case, and on

20  which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

21  322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of

22  a genuine issue of material fact.  *Id.* at 323.  An issue of material fact is genuine only if there is

23  sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is

24  material if it "might affect the outcome of the suit under the governing law."  *Anderson v.*

25  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

26      If the moving party meets its initial burden, the burden then shifts to the opposing party

27  to present specific facts that show there to be a genuine issue of a material fact.  *See* Fed R. Civ.

28  P. 56(e); *Matsushita*, 475 U.S. at 586.  An opposing party "must do more than simply show that

1   there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587.  The

2   party is required to tender evidence of specific facts in the form of affidavits, and/or admissible

3   discovery material, in support of its contention that a factual dispute exists.  Fed. R. Civ. P.

4   56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party is not required to establish a

5   material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be

6   shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

7   *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.

8   1987).  However, "failure of proof concerning an essential element of the nonmoving party's

9   case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

10         The court must apply standards consistent with Rule 56 to determine whether the

11   moving party demonstrated there is no genuine issue of material fact and showed judgment to be

12   appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

13   "[A] court ruling on a motion for summary judgment may not engage in credibility

14   determinations or the weighing of evidence."  *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.

15   2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the

16   nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving

17   party.  *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002).  The mere scintilla

18   of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly

19   supported summary judgment motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

20   However, where "opposing parties tell two different stories, one of which is blatantly

21   contradicted by the record" courts "should not adopt that version of the facts for purposes of

22   ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

23         **B.  Eighth Amendment Medical Deliberate Indifference**

24         The Constitution indisputably requires prison officials to provide inmates with reasonably

25   adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  To hold an official liable for

26   violating this duty under the Eighth Amendment, the inmate must satisfy two prongs, an objective

27   prong and subjective prong.  First, the inmate must suffer from a serious medical need (the

28   objective prong); and, second the official must be deliberately indifferent to the inmate's serious

4

1    medical need (the subjective prong). *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012),

2    *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014);

3    *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). A medical need is "serious" if the

4    failure to treat "could result in further significant injury or the unnecessary and wanton infliction

5    of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted). The

6    "second prong—defendant's response to the need was deliberately indifferent—is satisfied by

7    showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need

8    and (b) harm caused by the indifference." *Id*. (internal citations omitted). This standard requires

9    that the prison official must not only "be aware of facts from which the inference could be drawn

10   that a substantial risk of serious harm exists," but that person "must also draw the

11   inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "If a [prison official] should have

12   been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no

13   matter how severe the risk." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir.

14   2002). This "subjective approach" focuses only "on what a defendant's mental attitude actually

15   was." *Farmer*, 511 U.S. at 839.

16        Deliberate indifference is a higher standard than medical negligence or malpractice, and a

17   difference of opinion between medical professionals—or between a physician and the prisoner—

18   generally does not amount to deliberate indifference. *See generally Toguchi v. Chung*, 391 F.3d

19   1051 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (A mere "difference

20   of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.").

21   To prevail on a claim involving choices between alternative courses of treatment, a prisoner must

22   show that the chosen course of treatment "was medically unacceptable under the circumstances,"

23   and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson*,

24   90 F.3d at 332.

25        An "inadvertent failure to provide medical care" will not sustain a claim. *Estelle v.*

26   *Gamble*, 429 U.S. 97, 105 (1976). Misdiagnosis alone is not a basis for a claim, *see Wilhelm v.*

27   *Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012), and a "mere delay" in treatment, "without more, is

28   insufficient to state a claim of deliberate medical indifference," Shapley *v. Nevada Bd. of State*

5

1  *Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  Instead, a prisoner must show that a delay

2  "would cause significant harm and that defendants should have known this to be the case."

3  *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002).

### III.  ANALYSIS

### A.  Allegations in Support of Medical Deliberate Indifference Claim in SAC

6       According to the allegations in the SAC, Defendant was deliberately indifferent to

7  Hutchins' serious medical need when she tapered and discontinued the morphine prescribed to

8  treat his knee and shoulder pain, and instead prescribed him acetaminophen with codeine

9  ("Tylenol-3") and ibuprofen, which caused him side effects.  (*See generally* Doc. No. 21).

10  Hutchins states he had shoulder surgery in 2013 and was prescribed morphine for his pain after

11  the surgery.  (*Id*. at 3).  Hutchins alleges he was prescribed and took morphine to address his pain

12  from January 2014 until October 7, 2014.  (*Id*., ¶ 2).  On or about August 16, 2014, Hutchins

13  submitted a health care services request form requesting a refill of his morphine and requesting

14  his ibuprofen prescription be discontinued because it caused him severe stomach pain, nausea,

15  and dizziness.  (*Id*. at 4, ¶ 5).  After not receiving an answer to the August 16 request, Hutchins

16  submitted a second health care services request on August 21, 2014.  (*Id*.).  Hutchins claims he

17  did not receive a refill for his morphine and was experiencing chronic arthritis in his left shoulder

18  and both knees and a tear in his left meniscus.  (*Id*.).  Hutchins states although he submitted

19  multiple health care services request forms, his requests went unanswered and he had no pain

20  medication causing him to needlessly suffer pain from September 8-12, 2014. (*Id*. at 4-5, ¶ 7).[4]

21       On or about September 12, 2014, Defendant Johal examined Hutchins and reduced his

22  morphine dosage from 30 milligrams to 15 milligrams.  (*Id*.).  Plaintiff alleges Johal stated she

23  was reducing Hutchins' pain medication because he is an addict and because he complained too

24  much.  (*Id*. at 5-6).  According to Plaintiff, when Johal discontinued his morphine on October 7,

25  2014, she knew it would cause him excruciating knee and shoulder pain.  (*Id*.).  Hutchins avers he

26

27  _____

[4] Plaintiff's allegations at ¶¶ 2 and 7 are contradictory.  Plaintiff states he was prescribed and was taking
morphine from "January 2014, through October 7, 2014" but then states he suffered needlessly because he

28  had no pain medication from September 8-12, 2014.  (Doc. No. 21 at 3-5).

1    went without pain medication from October 7-13, 2014.  (*Id*.).  He alleges Johal took him off

2    morphine to "teach him a lesson" and "ensure he suffered."  (*Id*.).  Hutchins claims Johal did not

3    taper Hutchins from morphine gradually, as required by California's Prison Health Care Services

4    ("CPHCS") Pain Management Guidelines.  (*Id*.).

5          On October 8, 2014, Hutchins had arthroscopic surgery.  (*Id*. at 8).  His surgeon, Dr. Paik,

6    noted Hutchins could not take ibuprofen because it upset his stomach.  (*Id*.).  On or about October

7    8, 2014, Hutchins submitted an inmate request for interview form, asking Johal to reinstate his

8    morphine prescription.  (*Id*. at 7).  Johal failed and/or refused to respond in a timely manner.

9    (*Id*.).  However, Hutchins acknowledges Johal examined him on or about October 13, 2014, at

10   which time he renewed his request for pain medication.  (*Id*.).  Hutchins appraised Johal he was

11   having withdrawal symptoms, pain, and chills.  (*Id*.).  Hutchins claims Johal advised him that she

12   would only prescribe him Tylenol-3 and ibuprofen because he was an addict.  (*Id*.).  Hutchins

13   states he told Johal those medications caused him abdominal pain, nausea, and dizziness.  (*Id*.).

14   Johal allegedly told Hutchins to stop complaining to her supervisor and to leave her office.  (*Id*.).

15         Hutchins contends Johal's decision to discontinue his morphine prescription was "not

16   based upon all objective information pursuant to CPHCS" guidelines.  (*Id*.).  On January 21,

17   2015, Hutchins' patient-inmate health appeal log was filed in the appeal's coordinator office, in

18   which he complained, *inter alia*, that Johal was wrongfully denying him his morphine

19   prescription.  (*Id*.).  From February through July 2015, Hutchins proceeded through the 602-

20   inmate appeal process, where he sought, *inter alia*, a reinstatement of his morphine prescription.

21   (*Id*. at 10).  Hutchins' appeal was denied at the third level of review with a finding that Hutchins

22   was receiving all medically necessary care.  (*Id*.).  As relief in his SAC, Hutchins seeks a

23   declaratory judgment stating Johal was deliberately indifferent to his medical needs and

24   compensatory and punitive damages.

25         **B.  Plaintiff's Failure to Properly Oppose the Motion**

26         Hutchins filed an opposition to Defendant's motion for summary judgment, but he failed

27   to provide a separate statement of undisputed facts as required by Local Rule 260(a).  (Doc. No.

28   67).  Instead, Hutchins describes in his opposition the exhibits he submitted and submits his own

1   declaration which again describes exhibits attached to his opposition.  (*Id*. at 1-13).  Hutchins also

2   submitted a copy of one page of Defendant's statement of undisputed facts on which he

3   handwrote objections.  (*Id*. at 30).  Thus, Plaintiff has failed to address the bulk of Defendant's

4   statement of undisputed facts.

5         As the non-moving party, Hutchins is required to provide affidavits, and/or admissible

6   discovery material demonstrating a factual dispute exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475

7   U.S. at 586 n.11.  Where a party fails to do so, "Rule 56 is clear that although a court *may* deem

8   facts admitted in the exercise of its discretion, it need not do so."  *Warkentin v. Federated Life*

9   *Ins. Co.*, 594 F. App'x 900, 902-903 (2014); *see* Fed. R. Civ. P. 56 Advisory Committee Notes

10  (2010) (noting that "the court may choose not to consider [a] fact as undisputed, particularly if the

11  court knows of record materials that show grounds for genuine dispute").  Nor may the Court

12  automatically grant summary judgment to a defendant solely because a plaintiff fails to properly

13  oppose the motion.  *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994); *Martinez v.*

14  *Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003).

15        However, summary judgment cannot be avoided by making conclusory allegations

16  unsupported by factual data.  *Arpin v. Santa Clara Valley Transportation Agency,* 261 F.3d 912,

17  922 (9th Cir. 2001) *(citing Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989)).  Where, as here, a

18  party fails to properly support an assertion of fact or fails to challenge the facts asserted by the

19  moving party, the non-moving party may be deemed to have admitted the validity of those facts.

20  *See* Fed. R. Civ. P. 56(e)(2).  The Court will nonetheless consider the entire record and deem only

21  those facts true which are properly supported by evidence.

22        **C.  Statement of Undisputed Facts**

23        Defendant's MSJ attaches a list of undisputed facts.  (Doc. No. 59-2).  Each listed fact

24  cites to either Johal's declaration (*id*. at 10-16); Plaintiff's medical records (*id*. at 21-55, 84-127);

25  Plaintiff's deposition testimony (*id*. at 57-70); or a declaration submitted by Dr. Bennett Feinberg

26  (*id*. at. 72-82).  As discussed earlier, Plaintiff failed to provide his own statement of undisputed

27  facts and failed to present evidence refuting the bulk of Defendant's facts.  However, Plaintiff has

28  submitted, along with his opposition, his own declaration (Doc. No. 67 at 12-13); various medical

8

records and health care services request forms (*id.* at 15-28, 44); and handwritten objections at various parts of Defendant's statement of undisputed facts (*id.* at 30).  Having reviewed the record, the undersigned finds the following relevant facts to be undisputed, unless otherwise noted.

- Hutchins has had three surgeries while incarcerated: knee surgery in 2009, shoulder surgery in 2013, and knee surgery in 2014.  (Doc. No. 59-2 at 59-62).

- Hutchins was prescribed morphine in the "early part of 2014," a couple months after his second surgery for his shoulder.  (*Id.* at 63).

- On August 16, 2014, Hutchins submitted a health care services request form requesting his morphine prescription to be refilled and stating his current medication upsets his stomach.[5]  (Doc. No. 67 at 15).  Hutchins has presented no evidence that Johal read or knew about this form.  (Doc. No. 68 at 5).

- On August 21, 2014, Hutchins submitted a health care services request form again requesting that his medication, presumably his morphine, be refilled.  (Doc. No. 59-2 at 97).

- On September 12, 2014, Dr. Johal examined Hutchins for his complaints of chronic knee and shoulder pain.  (*Id.* at 12 ¶ 6; 18).

- At the September 12, 2014 appointment, Dr. Johal renewed Hutchins' morphine prescription of 30 milligrams of morphine in the morning and 15 milligrams of morphine in the evening.  (*Id.* at 12, ¶ 9).  Johal stated she would refer Hutchins' case to the pain committee.  (*Id.* at 18).  Also, on September 12, 2014, Johal prescribed Hutchins ibuprofen and ranitidine, which is prescribed to counteract upset stomach issues caused by ibuprofen.  (*Id.* at 24).  Hutchins states that he believes Johal prescribed him ibuprofen at this appointment as well.  (*Id.* at 65).

- Based on the physical examination and Hutchins' history, Dr. Johal presented Hutchins' case to the Pain Management Committee.  (*Id.* at ¶ 12).  Plaintiff handwrites

---

[5] The Court notes that the current medication in question is nearly illegible.  However, it appears that Hutchins wrote "Motrin" as the medication that upset his stomach.

"disputed" next to this fact without any explanation or evidence.  (Doc. No. 67 at 30).

- On September 17, 2014, the Pain Management Committee decided to taper, and eventually discontinue, Hutchins' morphine prescription.  (Doc. No. 59-2 at 12, ¶ 10, *id*. at 19).  Plaintiff disputes this fact but provides no evidence.  Instead, he points out the form wrongly has Corcoran Substance Abuse Facility written on it.  (Doc. No. 67 at 30).  In reply, Defendant explains the form is a template used by multiple facilities, which is why the wrong facility appeared on the form.  (Doc. No. 68-1 at 20, ¶ 3).

- Dr. Johal was not a *voting* member of the Pain Management Committee on September 17, 2014.  (*Id*. at ¶ 10) (emphasis added).  Plaintiff disputes this, pointing to Defendants' answer to the SAC stating, "Defendant admits she was a *member* of the Pain Management Committee at Wasco State Prison."  (Doc. No. 38 at 5) (emphasis added).  The Court notes that the operative difference here is between a *member* and a *voting member* of the committee.  Specifically, in her Answer, Defendant admits she was a member of Committee "and the Committee reviewed her recommendation to taper and deactivate Plaintiff's morphine prescription."  (*Id*., ¶ 27).

- Per the CCHCS Pain Management Guidelines, opioids, like morphine, are not the preferred treatment for chronic pain.  Opioid therapy for chronic nonmalignant pain should never be considered a long-term solution.  Prescriptions for morphine are restricted to those inmate-patients with objective evidence of severe disease.  The inmate patient may develop an addiction to morphine if used long term.  (Doc. No. 59-2 at 12, ¶ 11).  Plaintiff states that this fact is "undisputed."  (Doc. No. 67 at 30).

- On or around September 23, 2014, Dr. Johal refilled Hutchins' morphine prescription for seven days with a tapering dose of 15 milligrams twice a day, and instructions to further taper his prescription to 15 milligrams daily after an additional seven days, as recommended by the Pain Management Committee.  (Doc. No. 59-2 at 12, ¶ 12; *id*. at 26).

- On or around October 7, 2014, Hutchins' morphine prescription was discontinued, as recommended by the Pain Management Committee.  (*Id*. at 13, ¶ 13).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- Hutchins had surgery on his knee on October 8, 2014.  (*Id*. at 13, ¶ 14).

- After his October 8, 2014 knee surgery, Dr. Paik, the surgeon, prescribed Hutchins Tylenol-3. The surgeon did not prescribe him morphine.  (Doc. No. 59-2 at 67; Doc. No. 67 at 23).

-  On October 8, 2014, Hutchins requested to interview Dr. Johal, claiming that he was having "withdrawals" and that the Tylenol-3 was not "taking the edge off [his] pain." There were no allegations that the Tylenol-3 was causing any negative physical side effects in this interview request.  (Doc. No. 21 at 19).

- At some point, a physician ordered that Hutchins' ibuprofen be stopped.  (Doc. No. 67 at 27).  However, the date and physician on this medical record are illegible.  (*Id*).

- Following an October 13, 2014 appointment, Dr. Johal submitted a request for services for physical therapy for Hutchins' right knee, referred him for a steroid shot for his shoulder, referred him to a psychologist for pain management, and prescribed him pain medication on an as needed basis, including Tylenol-3 and ibuprofen, as well as ranitidine.  (Doc. No. 59-2 at 13, ¶ 17; *id*. at 28, 30-32).

- When Dr. Johal treated Hutchins, he had not identified an allergy to ibuprofen or Tylenol-3 and his medical records did not notate an allergy to these medications.  (*Id*. at 78-79, ¶¶ 32, 33).

- Johal states Hutchins never informed her that acetaminophen with codeine or ibuprofen causes him abdominal pain, nausea, or dizziness.  (*Id*. at 14, ¶ 20).  Hutchins states Johal knew he had "issues" with ibuprofen and Tylenol 3.  (*Id*. at 64).

- On October 20, 2014, Dr. Paik stated that Hutchins was "unable to take anti-inflammatory drug as it upsets his stomach."  (*Id*. at 52).

- On October 25, 2014, Hutchins submitted a health care services request form in which he requested pain medication and stated that ibuprofen and Tylenol-3 cause him extreme nausea and dizziness.  (Doc. No. 67 at 16).  Hutchins presents no evidence to demonstrate Johal knew of or read this form.  (Doc. No. 68 at 5).

- On October 31, 2014, Hutchins had another appointment with Dr. Johal.  Hutchins

informed Dr. Johal nothing worked for his pain except morphine.  Johal told Hutchins

he should at least try to take the prescribed pain medication.  (*Id*. at 14, ¶ 22; 48).

Hutchins presents no evidence he told Johal that Tylenol-3 and ibuprofen gave him

side-effects during this appointment.

- Also, on October 31, 2014, Johal prescribed ranitidine, a medication to mitigate
  stomach issues caused by ibuprofen.  (*Id*. at 14 ¶ 22; 50).

- Johal states she did not see Dr. Paik's typed report before her appointment with
  Hutchins on October 31, 2014.  That report stated Hutchins could not take anti-
  inflammatory drugs because they upset his stomach.  (*Id*. at 14 ¶ 23).

- On November 7, 2014, Johal had an appointment with Hutchins where Johal
  documented Hutchins was doing fine and Hutchins did not report any new problems.
  Hutchins was participating in physical therapy and tolerating it well.  (*Id*. at ¶ 24; 54).

- On or about December 20, 2014, Hutchins was seen by Dr. Sheh, who stated in
  progress notes that Hutchins requested morphine because Tylenol-3 will not "work
  with his stomach."  (*Id*. at 121).

- Johal states her decision to prescribe Hutchins Tylenol-3 and ibuprofen was not made
  in conscious disregard to Hutchins' pain.  (*Id*. at 16, ¶ 27).

- Dr. Feinberg states Johal's decision to treat Hutchins with Tylenol-3 and ibuprofen
  was medically appropriate.  (*Id*. at 78-79, ¶ 32, 33).

**D.  The Undisputed Material Facts Show Johal Was Not Deliberately Indifferent**

Johal argues she is entitled to summary judgment because the undisputed facts do not

demonstrate that she acted with medical deliberate indifference to Hutchins.  (Doc. No. 59-1 at

14-20).  Specifically, Johal argues she did not disregard a serious risk of harm to Hutchins when

she discontinued his morphine and instead prescribed him multiple forms of pain relief, including

ibuprofen and Tylenol-3, a steroid shot, physical therapy, a knee brace, a referral to an orthopedic

surgeon and a referral to a psychologist for pain management.  (*Id*. at 14-15).  Further, Johal

argues that Hutchins' disagreement with Johal's course of treatment is merely a difference of

opinion that does not rise to the level of a constitutional violation.  (*Id*. at 15-16).

1    The undersigned first must consider whether Defendant, the moving party, has met her

2    initial burden of showing *prima facie* entitlement to summary judgment on the issue of Plaintiff's

3    medical deliberate indifference claim. *Celotex Corp.*, 477 U.S at 323. The *prima facie* elements

4    of medical deliberate indifference are (1) a "serious medical need by demonstrating that failure to

5    treat a prisoner's condition could result in further significant injury or the unnecessary and

6    wanton infliction of pain" and (2) that the defendant's "response to the need was deliberately

7    indifferent." *Wilhelm*, 680 F.3d at 1122 (internal quotation marks and citation omitted).

8    ### 1. Objective Prong: Serious Medical Need

9    The undisputed facts, when viewed in the light most favorable to Hutchins, indicate

10   Hutchins had a serious medical need. A serious medical need is evidenced by "the existence of

11   an injury that a reasonable doctor or patient would find important and worthy of comment or

12   treatment; the presence of a medical condition that significantly affects an individual's daily

13   activities; or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050,

14   1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d

15   1133 (9th Cir. 1997) (en banc). Here, the record reveals Hutchins had various physical ailments

16   (knee and shoulder conditions necessitating surgery) that caused him "severe pain while

17   performing daily life activities." (Doc. No. 21 at 9, ¶ 24-28). Plaintiff also states Tylenol-3 and

18   ibuprofen caused him stomach pain, nausea, dizziness, and made him feel nauseous. (Doc. No.

19   59-2 at 65-66; Doc. No. 21 at 11, ¶ 4-9). A reasonable jury therefore could find that Plaintiff's

20   chronic pain and medication side effects constituted a serious medical need.

21   ### 2. Subjective Prong: Failure to Respond Resulting in Harm

22   The Court now considers whether the subjective prong of deliberate indifference—failure

23   to respond to a prisoner's pain, resulting in harm—has been negated by Defendant. *Jett*, 439 F.3d

24   at 1096. This standard requires the prison official to not only "be aware of facts from which the

25   inference could be drawn that a substantial risk of serious harm exists," but that person "must also

26   draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To prevail on a claim

27   involving choices between alternative courses of treatment, as is the issue here, a prisoner must

28   show that the chosen course of treatment "was medically unacceptable under the circumstances,"

and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)**.**

### i. Discontinuation of Morphine

The Court first considers whether the undisputed facts demonstrate that Johal was deliberately indifferent when she discontinued Hutchins' morphine prescription.  It is undisputed that Hutchins' case was presented to the pain committee and the committee recommended Hutchins' morphine be tapered and discontinued.  Also, it is undisputed that Johal recommended tapering and discontinuing Hutchins' morphine.  The issue in dispute is whether Johal's recommendation to taper and discontinue morphine was "medically unacceptable under the circumstances" and was chosen in "conscious disregard of an excessive risk" to Hutchins' health. *Jackson*, 90 F.3d 332.

As an initial matter, a mere "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference." *Id*.  And simply showing that a course of treatment proves to be ineffective, without showing that the medical professional's conduct was medically unacceptable under the circumstances and chosen in conscious disregard to Plaintiff's health, does not establish a claim for deliberate indifference. *Nicholson v. Finander*, No. CV 12-9993-FMO-JEM, 2014 U.S. Dist. LEXIS 51417, 2014 WL 1407828, at *9 (C.D. Cal. 2014) (citing *Estelle*, 429 U.S. at 105; *Toguchi*, 391 F.3d at 1058).  Further, Plaintiff does not have a right to dictate what medications he is prescribed. *Stiltner v. Rhay*, 371 F.2d 420, 421 n.3 (9th Cir. 1967) (allegations that a prisoner feels he is not receiving the "the kind and quality of medical treatment he believes is indicated" does not demonstrate deliberate indifference).

Multiple district courts in this circuit have held that a plaintiff's denial of morphine or other pain medication does not amount to deliberate indifference. *See, e.g., Arellano v. Sedighi*, No. 15-cv-02059-AJB-BGS, 2020 U.S. Dist. LEXIS 182939, at *145-46 (S.D. Cal. Oct. 1, 2020) ("Plaintiff's request for . . . Morphine is a difference of opinion and preference by Plaintiff. But failure to provide Plaintiff with the specific medication he requested and differences in judgment regarding an appropriate medical treatment is not enough to establish deliberate indifference."); *Gonzales v. Ugwueze*, No. 1:11-CV-01588-LJO, 2014 U.S. Dist. LEXIS 7315, at

14

1   *9 (E.D. Cal. Jan. 21, 2014), subsequently aff'd, 594 F. App'x 448 (9th Cir. 2015) (plaintiff's

2   opinion that he should have been provided other types of pain medication does not create a

3   dispute of material fact to preclude summary judgment); *Gonzales v. Ugwueze*, No. 1:11-CV-

4   01588-LJO, 2014 U.S. Dist. LEXIS 7315, 2014 WL 223506, at *9 (E.D. Cal. Jan. 21, 2014),

5   subsequently aff'd, 594 F. App'x 448 (9th Cir. 2015) (plaintiff's opinion that he should have been

6   provided other types of pain medication does not create a dispute of material fact to preclude

7   summary judgment); *Parlin v. Sodhi*, No. 10-6120 VBF (MRW), 2012 U.S. Dist. LEXIS 159187,

8   at *4 (C.D. Cal. Aug. 2012) ("[P]laintiff's claim is that he did not receive the type of treatment

9   and pain medication that he wanted when he wanted it.  His preference for stronger medication [.

10  . .] represents precisely the type of difference in medical opinion between lay prisoner and

11  medical personnel that is insufficient to establish a constitutional violation.").

12          Further, doctors' decisions to discontinue narcotics or opioids in favor of safer

13  medications have been found medically acceptable in other cases before this court. *See e.g.,*

14  *Solomon v. Negrete*, No. 2:10-cv-2103 WBS AC P, 2014 U.S. Dist. LEXIS 18556 (E.D. Cal.

15  Feb.11, 2014), *rep. and reco. adopted*, 2014 U.S. Dist. LEXIS 35338 (E.D. Cal. Mar.14, 2014)

16  (granting defendants' motion for summary judgment on plaintiff's claim challenging the

17  discontinuance of a morphine prescription with the use of an alternate prescription for

18  ibuprofen); *Fischer v. Algers*, No. 2:12-cv-2595 MCE CKD P, 2014 U.S. Dist. LEXIS 94678,

19  (E.D. Cal. July 10, 2014), rep. and reco. adopted, 2014 U.S. Dist. LEXIS 199015 (E.D. Cal. Aug.

20  15, 2014) (recommending defendants' motion for summary judgment be granted on plaintiff's

21  claim challenging his taper from morphine, to Tylenol 3 with codeine, to ibuprofen).

22  Accordingly, Johal's recommendation to the committee to taper and discontinue the morphine

23  prescription cannot amount to deliberate indifference.

24          Moreover, Johal presents undisputed evidence that her recommendation to taper and

25  discontinue Hutchins' morphine was not medically unacceptable under the circumstances.

26  Morphine is not a long-term treatment option for pain under CDCR guidelines.  (Doc. No. 59-2 at

27  12, ¶ 11).  The prison's pain committee was comprised of the Chief Physician and Surgeon, a

28  psychiatrist, physiologist, pharmacist, and other physicians.  (*Id*. at 12, ¶ 10).  The pain committee

1    concluded that Hutchins should be discontinued from his morphine.  (*Id.*).  A doctor's choice to

2    follow a pain committee's recommendation does not amount to deliberate indifference.  *See*

3    *Scherffius v. Smith*, No. 2:13-cv-1277 JAM DB P, 2019 U.S. Dist. LEXIS 221738, at *33-35

4    (E.D. Cal. Dec. 26, 2019) (finding no deliberate indifference where doctor followed the pain

5    committee's recommendation to discontinue plaintiff's morphine and place plaintiff on non-

6    narcotic medication); *Miller v. Cal. Dep't of Corr. & Rehab. (CDCR)*, No. 16-cv-02431-EMC,

7    2018 U.S. Dist. LEXIS 11716, at *53-54 (N.D. Cal. Jan. 24, 2018) (same).  Further, Johal

8    presents the medical opinion of Dr. Bennett Feinberg, who opined that Johal's choice of Tylenol-

9    3 and ibuprofen rather than morphine was medically appropriate under the circumstances.  (Doc.

10   No. 59-2 at 78-79).

11          Further, Johal presents evidence that she did not taper and discontinue Hutchins'

12   morphine in conscious disregard to an excessive risk to Hutchins' health.  *Wilson v. Seiter,* 501

13   U.S. 294, 297 (1991) (finding that there must be sufficient facts to indicate a culpable state of

14   mind on the part of the defendants).  Johal tapered the morphine over a two-week period and then

15   prescribed Hutchins multiple different forms of alternative pain relief, including ibuprofen and

16   Tylenol-3, a steroid shot, physical therapy, a knee brace, and a referral to a psychologist for pain

17   management.  (Doc. No. 59-1 at 14-15); *see O'Brien v. Saha*, No. 19-cv-01957-JLS (JLB), 2021

18   U.S. Dist. LEXIS 18731, at *60 (S.D. Cal. Jan. 30, 2021) (no finding of deliberate indifference

19   where plaintiff was provided with multiple alternatives to morphine for pain relief, such as

20   Tylenol, ibuprofen, steroid injection, physical therapy, and mental health services).

21          The burden now shifts to Hutchins to present specific facts that show a genuine issue of a

22   material fact as to the tapering and discontinuation of his morphine.  *See* Fed R. Civ. P. 56(e);

23   *Matsushita*, 475 U.S. at 586.  As an initial matter, Hutchins does not identify any medical records

24   which support his claim that he should not have had his morphine discontinued and he has not

25   provided any opinion from a medical expert or any other admissible testimony from a medical

26   provider in that regard.  Hutchins does not assert that he is a medical expert.  Hutchins' self-

27   assessment that his treatment with morphine should have been continued would be inadmissible

28   at trial and a reasonable trier of fact would have no evidence upon which to find those alleged

                                                    16

1  facts. Fed. R. Civ. P. 56(c)(4); *see also Arellano*, 2020 U.S. Dist. LEXIS 182939, at *142

2  (finding no genuine issue of material fact where plaintiff did "not [provide] any evidence to

3  support his own medical opinion" that the medication prescribed to him was an ineffective or

4  inappropriate treatment); *Jackson v. Blain*, No. CV 20-1932-SVW (KS), 2020 U.S. Dist. LEXIS

5  240327, at *22 (C.D. Cal. Nov. 12, 2020) ("Plaintiff may believe that his chronic pain should be

6  treated indefinitely with opioid analgesics, but his belief does not render a contrary decision by a

7  medical professional unconstitutional under the Eighth Amendment.).

8        Construing the evidence in the light most favorable to Hutchins, the undersigned finds no

9  evidence to raise a triable issue of fact as to whether Defendant was deliberately indifferent to

10  Hutchins' medical need when she tapered and discontinued his morphine prescription. The

11  undersigned recommends that Defendant be granted summary judgment on this claim.

12                    **ii. Side Effects of Tylenol-3 and Ibuprofen**

13        The undersigned now considers whether the undisputed facts demonstrate that Johal was

14  deliberately indifferent when she prescribed Hutchins Tylenol-3 and ibuprofen, which caused him

15  painful side effects. It is not disputed that Johal prescribed Hutchins Tylenol-3 and ibuprofen, or

16  that he suffered painful side effects as a result. The issue in dispute is whether Johal's

17  prescription of Tylenol-3 and ibuprofen was "medically unacceptable under the circumstances"

18  and was chosen in "conscious disregard of an excessive risk" to Hutchins' health. *Jackson*, 90

19  F.3d 332.

20        Defendant presents evidence that her course of treatment was not medically unacceptable

21  under the circumstances. As stated previously, Johal prescribed Hutchins a wide range of

22  treatments for his pain in addition to Tylenol-3 and ibuprofen. A defendant "cannot be said to

23  have been indifferent" to an inmate's pain if they "took steps to address it." *DeGeorge v.*

24  *Mindoro*, No. 17-CV-06069-LHK, 2019 WL 2123590, at *7 (N.D. Cal. May 15, 2019). Further,

25  Johal prescribed Hutchins ranitidine, which is a drug prescribed to counteract side effects of

26  ibuprofen. (Doc. No. 59-2 at 14, ¶ 22); *Tiemens v. Andreasen*, No. CIV S-09-0052 FCD EFB P,

27  2011 U.S. Dist. LEXIS 15869, at *21 (E.D. Cal. Feb. 16, 2011) (finding that defendants

28  reasonably addressed plaintiff's stomach symptoms, which were caused by side effects of his

1   prescribed medication, through antacid medication).  Finally, Johal presents the Declaration of

2   Dr. Feinberg, who opines that "Dr. Johal's decision to prescribe Plaintiff ibuprofen to treat his

3   pain was medically appropriate" and "Dr. Johal's decision to prescribe Plaintiff Tylenol #3 to

4   treat his pain was medically appropriate."  (Doc. No. 59-2 at 78, ¶32 and 79, ¶ 33).

5          Further, Defendant presents evidence she did not act in conscious disregard to an

6   excessive risk to Hutchins' health when she prescribed him Tylenol-3 and ibuprofen.  Defendant

7   submits evidence Hutchins took Tylenol-3 and ibuprofen in the past without complaints.  (*Id*. at

8   14, ¶ 22).  Where a doctor is aware that a prisoner has taken certain medications in the past

9   without issue, her act of prescribing such medications cannot constitute deliberate indifference

10  because her "actions were informed by her past experience treating" the prisoner.  *Toguchi v.*

11  *Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004); *see also Arellano*, 2020 U.S. Dist. LEXIS 182939,

12  at *144 (finding that a health care provider's prescription of medication that prisoner tolerated in

13  the past did not constitute medical deliberate indifference).  Johal also points to the fact that

14  Hutchins' medical chart did not document any allergies to Tylenol-3 and ibuprofen.  (Doc. No.

15  59-2 at 14, ¶ 22).  *See Toguchi*, 391 F.3d at 1058 ("Because [the doctor] did not believe that

16  Cogentin use presented a serious risk of harm to [plaintiff], her conduct cannot constitute

17  deliberate indifference."); *Thomas v. Antipov*, No. 2:11-cv-1138-MCE-EFB P, 2014 U.S. Dist.

18  LEXIS 175688, at *32-33 (E.D. Cal. Dec. 18, 2014) (finding that under *Toguchi*, a doctor's

19  decision to prescribe Tylenol-3 cannot constitute deliberate indifference if [the doctor] did not

20  believe that the medication presented a serious risk of harm to plaintiff).

21         The burden now shifts to Hutchins to present specific facts that show a genuine issue of a

22  material fact.  *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586.  As stated previously,

23  Hutchins does not identify any medical records which support his claim that Johal was

24  deliberately indifferent in prescribing him Tylenol-3 and ibuprofen.  Nor does he provide an

25  opinion from a medical expert or any admissible testimony from a medical provider in this

26  regard.  Hutchins does not state that he is a medical professional.  Hutchins' self-assessment that

27  the Tylenol-3 and ibuprofen prescription was improper would thus be inadmissible at trial and a

28  reasonable trier of fact would have no evidence upon which to find those alleged facts.  Fed. R.

1   Civ. P. 56(c)(4).

2          And even if Hutchins can show that Johal prescribed the medications despite knowing the

3   medications caused side effects, this at most constitutes negligence.  Negligence will not support

4   a claim of deliberate indifference to serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106,

5   97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Broughton v. Cutter Lab*., 622 F.2d 458, 460 (9th Cir.

6   1980).  Claims arising from side effects of medication only state a claim of negligence, not

7   medical deliberate indifference.  *Wynn v. Angelone*, No. 94-15393, 1994 U.S. App. LEXIS

8   28382, at *4 (9th Cir. Oct. 6, 1994) (finding that where a doctor prescribed ibuprofen that caused

9   prisoner ill effects, doctor was not deliberately indifferent—most that was shown was negligence

10  or medical malpractice); *Pierce v. Lopez*, No. 1:10-cv-00486-AWI-MJS (PC), 2012 U.S. Dist.

11  LEXIS 57398, at *12 (E.D. Cal. Apr. 23, 2012) (doctor's failure to recognize side effects from

12  antibiotics was only negligence, not deliberate indifference); *Uhuru v. Greenman*, No. CV 07-

13  02937-JVS (VBK), 2009 U.S. Dist. LEXIS 134432, at *24 (C.D. Cal. Sep. 21, 2009) (finding that

14  defendant doctors were "not liable for the side effects of medications used to control plaintiff's

15  mental health" because plaintiff's injuries due to side effects of his medication stated only a claim

16  of negligence); *Murillo v. Thornton*, No. 07-CV-0197 W(POR), 2008 U.S. Dist. LEXIS 1520, at

17  *4 (S.D. Cal. Jan. 9, 2008) (prisoner's allegations that defendant "prescribed him the wrong

18  medication and did not inform him about the side effects," causing plaintiff "severe stomach

19  aches and headaches for four months," failed to state an Eighth Amendment claim).

20         Viewing the evidence in the light most favorable to the nonmoving party, Plaintiff fails to

21  show Johal's prescription of Tylenol-3 and ibuprofen was medically unacceptable under the

22  circumstances.  *See Jackson*, 90 F.3d at 332.  Further, Hutchins fails to present evidence

23  Johal chose to prescribe these medications in conscious disregard of an excessive risk to

24  Hutchins' health.  *Id.*

25         Therefore, in light of the above, the undersigned finds Johal was not deliberately

26  indifferent to Hutchins' medical needs when she prescribed him Tylenol-3 and ibuprofen.

27  Summary judgment should be granted in favor of Defendant on this claim.

28         Accordingly, it is **RECOMMENDED**:

1.  Defendant's Motion for Summary Judgment (Doc. No. 59) is GRANTED.

2.  Judgment be entered in favor of the Defendant; all deadlines be terminated; and the case be closed.

Further, it is **ORDERED**:

The Clerk of Court is directed to amend the docket to reflect Johal as the sole Defendant in this matter.

### NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:    October 6, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

20